**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 4 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| N. E. M., Minor  Guardian ad litem Margaret Bonetti; JOSE ROBERTO MEJIA-GOMEZ; ELIAS MEJIA-BAIRES, | No.    17-17337 |
| Plaintiffs-Appellees, | D.C. No. 5:14-cv-05598-EJD |
| v. | MEMORANDUM[*] |
| CITY OF SALINAS; JOSH LYND; DANNY WARNER, Officer, | |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted January 15, 2019
San Francisco, California

Before:  WALLACE and FRIEDLAND, Circuit Judges, and LASNIK,[**] District Judge.

Salinas police officers Josh Lynd and Danny Warner appeal from the district

court's denial of summary judgment on qualified immunity.  We have jurisdiction

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

to review interlocutory appeals from the denial of summary judgment. *See Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 944–45 (9th Cir. 2017). We review such denials de novo. *Id.* at 946. We ask whether the officers would be entitled to qualified immunity as a matter of law, "assuming all factual disputes are resolved, and all reasonable inferences are drawn," in plaintiffs' favor. *George v. Morris*, 736 F.3d 829, 836 (9th Cir. 2013). In determining whether an officer is entitled to qualified immunity, we consider "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Estate of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017) (quoting *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014)). We affirm.

## I.

"An objectively unreasonable use of force is constitutionally excessive and violates the Fourth Amendment's prohibition against unreasonable seizures." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). The use of deadly force, in particular, "implicates the highest level of Fourth Amendment interests." *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016). In evaluating whether the use of force was reasonable, we "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case." *Estate of Lopez*, 871 F.3d at 1006 (quoting *George*, 736 F.3d at

2

838). However, the "most important" factor is whether the suspect posed an immediate threat to the safety of the officers or others. *Id.* (quoting *George*, 736 F.3d at 838).

On the facts as we must regard them at this stage, a reasonable jury could conclude the following. On May 20, 2014, the officers were dispatched to investigate Carlos Mejia-Gomez based on a 911 call from a woman who reported that Mejia-Gomez had attempted to break into her home, threatened her dog with "scissors" (that turned out to be gardening shears), and exposed himself to her. When the officers arrived, Mejia-Gomez was on a public sidewalk with gardening shears inside his backpack. He appeared to be drunk, and he started to walk away slowly. The officers followed, giving verbal commands to stop and to raise his hands, but Mejia-Gomez continued to walk away. Both officers attempted to use their tasers, but the tasers malfunctioned. At some point, Mejia-Gomez pulled out the shears from his backpack and reportedly swung them at the officers. A short time later, Mejia-Gomez fell over a small partition and onto his back, still holding the shears. After Mejia-Gomez got back up, the officers continued to pursue him as he slowly walked away.

At the time of the shooting, Mejia-Gomez turned toward the officers in a "normal" manner. His turning was not sudden. Lynd was "somewhere between 6 feet and 7 inches and 8 feet and 7 inches" from Mejia-Gomez, and Warner was 15

3

to 20 feet away. Although there were several bystanders to the encounter and a bakery on the street corner that Mejia-Gomez was approaching, the bystanders were "on the other side [of the] street" or not otherwise nearby Mejia-Gomez, and there were no visible patrons at the bakery.

Viewing these as the facts in this light as we must at the summary judgment stage, the district court did not err in denying the motion for summary judgment. *See also Estate of Lopez*, 871 F.3d at 1020. The jury, however, may find the facts differently after trial and arrive at a different conclusion.

## II.

An officer's actions violate a clearly established right when, at the time of the challenged actions, "'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Estate of Lopez*, 871 F.3d at 1017 (alterations omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). This requirement does not mean that there must be a prior case with identical facts. An officer can still be on notice that his conduct "violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). But, "in the light of pre-existing law[,] the unlawfulness [of the officer's conduct] must be apparent." *Id.* at 739 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

At the time of the shooting, it was clearly established that officers may not

4

use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions. *See George*, 736 F.3d at 838; *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 324–25 (9th Cir. 1991); *see also Estate of Lopez*, 871 F.3d at 1020 (holding that *George* and *Curnow* clearly established this principle at the time of the shooting in that case, October 22, 2013). This is true even in circumstances in which the suspect has allegedly "committed a violent crime in the immediate past." *See Harris v. Roderick*, 126 F.3d 1189, 1203–04 (9th Cir. 1997).

Accordingly, the officers are not entitled to qualified immunity at this summary judgment stage. Again, our holding does not foreclose the jury from concluding otherwise after trial.

### III.

The City of Salinas and the officers also appeal from the district court's denial of summary judgment on plaintiffs' state law claims. We can exercise pendant appellate jurisdiction "over issues that ordinarily may not be reviewed on interlocutory appeal" if those issues are "inextricably intertwined" with other issues properly before the court. *See Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir. 2000). We have interpreted issues to be inextricably intertwined if "we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal," or the "resolution of the issue properly raised on

5

interlocutory appeal necessarily resolves the pendent issue." *Id.* at 1285 (internal citations omitted).

The parties agree that the resolution of the appeal on qualified immunity necessarily resolves the appeal on the state law claims. Because we affirm the denial of summary judgment on qualified immunity, we likewise affirm as to the state law claims. To the extent the defendants argue that the Bane Act claim under Cal. Civ. Code § 52.1 is not resolved by the denial of qualified immunity, we lack jurisdiction to consider that argument. *Cunningham*, 229 F.3d at 1285.

**AFFIRMED**.